Burt Moran and Emily M. Moran, Husband and Wife v. Commissioner.
Moran v. Commissioner
Docket No. 4355.
United States Tax Court
1945 Tax Ct. Memo LEXIS 107; 4 T.C.M. (CCH) 821; T.C.M. (RIA) 45266; July 31, 1945
Lee M. Friedman, Esq., 30 State St., Boston, Mass., for the petitioners. Carl A. Stutsman, Esq., for the respondent. ARNOLD Memorandum Findings of Fact and Opinion ARNOLD, Judge: This case involves a deficiency in income tax for the calendar year 1941 in the amount of $1,148.50. The sole issue is whether petitioners are entitled to a bad debt deduction. The case was submitted on oral testimony and certain exhibits, from which we make the following Findings of Fact Petitioners are husband and wife and filed their joint return for the year ended December 31, 1941 with the collector of internal revenue at Boston, Massachusetts. Therein a bad debt deduction of $6,675 was claimed, based upon a loan made to Frank D. Neill on April 1, 1940, which the Commissioner in his notice of deficiency disallowed with the following *108 explanation: "The claimed deduction of $6,675.00 has been disallowed since it has been determined that Mrs. Moran did not sustain a loss from a bad debt within the meaning of the statute." Frank D. Neill, Inc., a Massachusetts corporation, engaged in the wool business, was to be refinanced and reorganized pursuant to a written memorandum dated March 1, 1940. The stock set-up in the reorganized corporation was to be as follows: Ralph H. Lindsay
125 shares
Homer Hervey
16 shares
Frank D. Neill
100 shares
Burt Moran
300 shares
William Franks, Jr.
1 share
Total
542 shares
Petitioner Burt Moran held no stock in the old corporation, and was unwilling to invest in the stock of the reorganized corporation unless the personal services of Frank D. Neill, an expert in the wool business, were available to the reorganized company. Neill was unwilling to become a member and devote his services thereto unless an arrangement were made whereby he would be given an opportunity to share in the profits of the reorganized corporation, if any. An arrangement to this effect, based on the relative stock ownership, satisfactory to Neill was made. Neill owned 11 shares in the *109 old company which had cost him $1,100, but was unable to make any additional cash investment in the reorganized company. Petitioner Burt Moran purchased 300 shares in the reorganized company and paid therefor $30,000. To effectuate the plan, during the month of April, 1940, petitioner Emily M. Moran loaned $8,900 of her own money to Neill taking his promissory note therefor dated April 1, 1940, payable to her order on demand with interest at the rate of 6 per cent per annum payable semi-annually. Concurrent with the execution of said note, Neill executed and delivered to her the following: "Boston, April 1, 1940. ",. Frank D. Neill, of Medford, hereby acknowledge that I have borrowed $8,900, from Emily Moran of Brookline, for which I have given my promissory note of even date, payable on demand, in the amount of $8,900., with interest payable at the rate of 6% per annum payable semi-annually. I have invested said monies in eighty-nine shares of Frank D. Neill, Incorporated, a Massachusetts corporation having an usual place of business in Boston, and I have delivered to her a certificate for said eighty-nine shares standing in my name, endorsed in blank. I hereby declare and agree *110 that I hold said eighty-nine shares of stock as Trustee under the terms hereof. "I hereby declare and agree that said shares of stock shall be collateral security for the said note and agree to apply any and all dividends and proceeds of said shares to the payment of said note. Upon any default on my part in the payment of said note I will execute any other and further documents necessary to enable said shares to be transferred or sold under and in accordance with this agreement, and that said Emily Moran shall have the right upon such default, without further demand or notice upon me, to cause said shares to be sold at public auction or private sale and that she may become the purchaser at such sale. After deducting costs and expenses of the collection the residue of the proceeds, if any, may be applied to the payment of any of my existing indebtedness to her, she returning the overplus to me in case there shall be any surplus. Upon the payment of said indebtedness otherwise than by sale of said shares, all obligation hereunder shall cease and said shares shall belong to me, free and clear of all trust or lien. "The benefit of this agreement to inure for the benefit of the administrators, *111 executors, heirs or assigns of said Emily Moran." Neill paid Mrs. Moran the first semi-annual interest due on the note. The reorganized business of Frank D. Neill, Inc. had no profits in the year 1941 and was otherwise unsuccessful. The business was terminated on or before July 24, 1941 and the assets taken over by R. H. Lindsay Co. in liquidation at approximately $25 per share payable to the stockholders as a liquidating dividend. Emily M. Moran received $2,225 on the stock held by her as collateral and Neill received $275 on the 11 shares held by him. On July 24, 1941 Neill executed and delivered to Mrs. Moran the following instrument: "I admit that I have defaulted in payment of promissory note dated April 1, 1940 for eighty-nine hundred dollars ($8,900.) under which I promised to pay Emily M. Moran eight-nine hundred dollars ($8,900.) on demand, and you are free to transfer now without any further action the shares of stock held by you as collateral, namely Certificate #17 of the Frank D. Neill, Inc. for eighty-nine (89) shares without being in any way obligated to me, and I agree that the stock may be sold to R. H. Lindsay Co. and there shall be no further claims by me *112 against Emily M. Moran on account of this sale or by reason of the receipt and retention by Emily M. Moran of the proceeds of the sale of said stock to R. H. Lindsay Co., which payment you may apply on the promissory note." On the same day by separate instrument Neill released and forever discharged Mrs. Moran from any and all claims and demands whatsoever with reference to the 89 shares. On March 12, 1942 Emily M. Moran, desiring the use of the note in connection with her tax liability, executed and delivered to Neill the following: "With your permission I am holding your note April 1, 1940 for $8,900.00 in favor of Mrs. Emily M. Moran. Against which I have your acknowledgment of inability to pay the aforesaid note. For your records the original note will be returned to you shortly as there is now no liability on your part to pay it." For the year 1941 Neill filed a personal income tax return reporting a gross income of $7,440 and for the year 1942 a personal income tax return reporting a gross income of $16,419. His gross income for these two years represented commissions received by him as a broker in the wool business after the liquidation of Neill, Inc. After receiving the *113 $2,225 on the stock held by her as collateral, Emily M. Moran, realizing her inability to make further collection on account of Neill's financial condition, released him from further liability. After Neill, Inc. was liquidated in 1941, the only assets Neill had was about $40 in excess of the $275 received for the 11 shares held by him. In 1941 Neill had a wife and five children to support and his wife had had a serious operation. He owed many bills for personal and family living expenses. The note in question represented an unconditional obligation on Neill's part to pay the amount stated therein. The balance due, after crediting the amount received on the 89 shares held as collateral, became worthless within the taxable year. Opinion The only question presented for our consideration is whether Emily M. Moran is entitled to a bad debt deduction in the amount of $6,675 for the year 1941 based upon the balance due on a promissory note payable to her and executed by Frank D. Neill, April 1, 1940. The applicable statute is section 23, Internal Revenue Code, which provides that in computing net income there shall be allowed as deductions: (k) BAD DEBTS. - *114 (1) General Rule. - Debts which become worthless within the taxable year; * * *. Respondent denied the claimed deduction. He contends that: (1) No unconditional obligation to pay the amount of the note ever existed; (2) if an unconditional obligation to pay did exist petitioners had not established that the debt became worthless in the year 1941. We think there was an unconditional promise to pay. The note was signed by Frank D. Neill and is an unconditional promise to pay "to Emily Moran or order the sum of EIGHTY-NINE HUNDRED (8900) DOLLARS upon demand with interest to be paid semi-annually at the rate of six (6) per cent per annum for such time as said sum, or any part thereof, shall remain unpaid." Neill paid the first semiannual interest falling due pursuant to the terms of the note. That the $8,900 was the personal funds of Emily M. Moran, advanced by her to Neill, with which he purchased the 89 shares, issued and standing in his name and which he endorsed in blank and pledged as collateral security, is not questioned. These shares, together with the 11 shares owned by Neill in the old company, which were carried over with the reorganized company, make his holdings in the *115 new company 100 shares, as outlined in the memorandum agreement providing for the refinancing and reorganization. Other written exhibits in evidence support the conclusion that Neill's obligation to pay was unconditional. While Neill testified that there was no unconditional obligation on his part to pay, and thought there was a written agreement to that effect, no such agreement was produced at the hearing. His oral testimony to that effect is flatly contradicted by the testimony of both Burt Moran and Emily M. Moran and the exhibits introduced in evidence. Neill's oral testimony could not overcome the testimony of the Morans, the note, and the other written evidence of record. Respondent's second contention, that if the Court should find that Frank D. Neill was unconditionally obligated to pay the face amount of the note the petitioners have not established that the debt became worthless in the year 1941, must likewise be rejected. Neill testified that after Frank D. Neill, Inc. had proved a losing venture in 1941, he had no means with which to pay the note; that he had about $40 in addition to the amount he received for the 11 shares held by him, which amounted to $275; that *116 he had many unpaid bills principally for personal and family living expenses. As to the amount reported on his return for 1941 as gross income, he testified that was for commissions earned by him as a street broker in the wool business after the liquidation of Frank D. Neill, Inc., and that his earnings were insufficient to pay his living expenses. Burt and Emily Moran were well acquainted with Neill, knew his financial condition and that he was hopelessly insolvent in 1941 after Frank D. Neill, Inc. was liquidated and collection on the note could not be enforced. By the plain terms of the statute the right to deduct a bad debt from gross income depends upon whether in fact the debt became worthless in the taxable year. The evidence here convinces us that Neill's debt became worthless within the taxable year, and we have so found. The petitioners are accordingly entitled to the deduction claimed. Decision will be entered for the petitioners.